IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEADFAST INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>ICL GROUP LTD. f/k/a ISRAEL CHEMICAL LIMITED and ICL ROTEM f/k/a ROTEM AMFERT NEGEV LTD.<br><br>    Defendants. | Civil Action No.: 1:22-cv-02329 |

**COMPLAINT FOR DECLARATORY RELIEF**

Plaintiff Steadfast Insurance Company ("Plaintiff") by way of Complaint against Defendants ICL Group Ltd. f/k/a Israel Chemical Limited ("ICL") and ICL Rotem f/k/a Rotem Amfert Negev Ltd. ("ICL Rotem") (collectively, "Defendants") alleges:

**THE PARTIES**

1. Plaintiff is an Illinois company with its principal place of business in Illinois.

2. ICL is an Israel company with its principal place of business in Israel that maintains a North American office in St. Louis Missouri.

3. ICL Rotem, a subsidiary of ICL, is an Israel company with its principal place of business in Israel.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over this matter under 28 U.S.C. § 1332 as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

5. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial portion of the events giving rise to this lawsuit took place within this District as the policy of insurance issued by Plaintiff to ICL was negotiated and issued by Plaintiff from its Illinois office and requires ICL to direct all future correspondence regarding performance under the contract, including notification of all claims and potential claims, to Plaintiff at its Illinois office.

## FACTUAL BACKGROUND

### A. The June 2017 Incident

6. ICL is a multi-national manufacturing company that develops, produces, and markets fertilizers, metals, and other chemical products.

7. ICL, through ICL Rotem, surface mines phosphates in Israel's Negev Desert.

8. On or about June 2017, the wall of an evaporation pool at ICL Rotem's processing facility in Mishor Rotem collapsed, allowing significant amounts of acidic phosphogypsum liquid to escape into the surrounding environment (the "Incident").

### B. The Underlying Litigations

9. On or around May 2018, the Israel Nature and Parks Authority filed suit against Defendants in the Beer-Sheva District Court in Israel (the "INPA Action") seeking compensatory damage due to the environmental and natural resource damage caused by the Incident.

10. Several additional potential class action lawsuits have also been filed against Defendants in Israel between July and August 2017 by private citizens, seeking compensatory damages due to the damage caused by the Incident. The actions include Class Action No. 14066-07-17 *Hoss v Rotem Amfert Negev Ltd.* (the "Hoss Action"), Class Action No. 4930-07-17 *Antman v. Rotem Amfert Negev Ltd.* (the "Antman Action"), and Class Action No. 37232-08-17 *Keynan v. Rotem Amfert Negev Ltd*. (the "Keynan Action").

2

**C. The Z Choice Pollution Liability Policy**

11. Plaintiff issued a Z Choice Pollution Liability Policy to Defendants for a three-year period commencing on March 1, 2015 (the "Policy").

12. The Policy was procured by Aon Risk Services Northeast Inc., a New York corporation, on behalf of ICL.

13. The Policy lists the address for ICL as 622 Emerson Road, Suite 500, St. Louis, MO 63141.

14. The Policy has a $25 million limit per pollution event subject to a $25 million aggregate policy limit and $5 million per pollution event deductible.

15. The Policy applies worldwide where permitted by applicable law.

16. Under the terms of the Policy's International Insurance Program Difference In Conditions Difference In Limits Interlocking Limits and Hold Harmless Endorsement, Plaintiff provides difference in conditions and difference in limits coverage for claims occurring outside the United States of America:

> **International Insurance Program**
> **Difference In Conditions**
> **Difference In Limits**
> **Interlocking Limits and Hold Harmless**
>
> \* \* \*
>
> In consideration of the payment of premium and the Deductible by the "named insured" and in reliance upon the statements made in the Application all of which are made a part hereof, we agree subject to all the terms, exclusions and conditions of the policy that:
>
> This policy is part of an international insurance program consisting of a number of different policies called "international program policies", which exist to ensure that the entities and natural persons insured under these "international program policies" are covered world-wide. To effectuate the intent of this international insurance program, the Policyholder, on behalf of all policyholders of and entities and natural persons insured under these "international

3

program policies", has agreed to special terms in the "international program policies" with the insurers thereof. All "international; program policies" shall be read in this context.

**I. LIMITS OF LIABILITY AND DEDUCTIBLE (SECTION VIII.)** is amended to add the following section:

DIFFERENCE IN CONDITIONS, DIFFERENCE IN LIMITS, LIMITS OF LIABILITY, HOLD HARMLESS, RETENTIONS AND DEDUCTIBLES

1. The insurance applies on a Difference In Conditions basis, subject to all other terms and conditions in this endorsement and this policy, provided an "insured" has a "claim":

    a. That occurs outside of the United States of America, including its territories and possessions; and

    b. There is a "local program policy" or "nonprogram policy" intended to respond to such "claim" in that country, state or territory but which does not, by its terms, provide coverage for such "claim".

    In that event, under this provision, we will pay for such "claim" where coverage is provided under the terms and conditions of this policy and when the insuring agreement(s) or definitions or conditions set forth under this policy and its endorsements are broader in meaning or scope than those of the "local program policy" or "nonprogram policy".

    We will, however, pay no more than the applicable limit of insurance indicated in the Declarations.

2. This insurance applies on a Difference In Limits basis, subject to all other terms and conditions in this endorsement and this policy, provided that an "insured" has a "claim":

    a. That occurs outside of the United States of America, including its territories and possessions; and

    b. There is a "local program policy" or "nonprogram policy" intended to respond to such "claim" in that country, state or territory; and

    c. Such "local program policy" or "nonprogram policy" covers, in whole or in part, the same "claim" as this policy.

    In that event, under this provision, we will pay the difference in limits between the applicable "local program

4

      policy" or "nonprogram policy" limits and the applicable limits in this policy, provided:

      a. Coverage is provided under the terms and conditions of this policy; and

      b. The limits under all applicable "local program policy(ies)" or "nonprogram policy(ies)" have been exhausted and the deductible(s) under all such policies have been applied.

      We will, however, pay no more than the applicable limit of insurance indicated in the Declarations.

17.    The Policy's International Insurance Program Difference In Conditions Difference In Limits Interlocking Limits and Hold Harmless Endorsement defines a "nonprogram policy" as "a primary policy providing substantially the same coverage as this policy effective on or after the beginning of the 'policy period' and which has been issued in a country without our specific direction or coordination for this insurance program."

18.    Under Coverage A set forth in the Policy's Z Choice Pollution Liability Policy coverage form, Plaintiff provides certain "cleanup costs" coverage:

    **I. INSURING AGREEMENTS**

    **THESE COVERAGES ONLY APPLY IF AND TO THE EXTENT SPECIFICALLY LISTED AS PROVIDED IN ITEM 5. OF THE DECLARATIONS.**

    **COVERAGE A: CLEANUP COSTS - ONSITE AND/OR OFFSITE EXISTING AND/OR NEW POLLUTION EVENT LIABILITY**

    We will pay "cleanup costs" an "insured" is legally obligated to pay to the extent "cleanup costs" result from an "existing pollution event" and/or "new pollution event" that is on, at, under, migrating or which has migrated from a "covered location" if that "pollution event":

    1. Is first "discovered" during the "policy period" and the "discovery" is reported to us in writing during the "policy period" or applicable extended reporting period described in EXTENDED REPORTING PERIODS (Section VII.); or

    2. Results in a "claim" first made against the "insured" during the "policy period" or optional extended reporting period, if

5

purchased, and the "claim" is reported to us in writing during the "policy period" or applicable extended reporting period described in EXTENDED REPORTING PERIODS (Section VII.).

19. The Policy's Amendatory Endorsement defines "cleanup costs" as follows:

**V. DEFINITIONS**

\* \* \*

**G.** "Cleanup costs" means:

1. Reasonable and necessary costs, charges and expenses incurred for "cleanup":

   a) To the extent required by "governmental authority"; or

   b) That have actually been incurred by the government or any political subdivision of the United States of America or any state there of or by third parties.

   c) to the extent required pursuant to the terms and conditions of any lease agreement for any "covered location"

   d) To the extent required to resolve a "claim" by a third party.

2. Reasonable and necessary costs, charges and expenses to repair, replace or rebuild real property or improvements damaged in the course of "cleanup" to substantially the same condition immediately prior to any such damage, but excluding any:

   (a) Damage caused by the underlying "pollution event"; or

   (b) Other than "green standards expenses" as described in SUPPLEMENTARY PAYMENTS (Section II.) paragraph C. GREEN STANDARDS EXPENSES APPLICABLE TO COVERAGE A ONLY, any costs, charges or expenses for improvements or betterments, including, but not limited to, those arising from compliance with any law that was not applicable to (including by operation of any grandfather provision contained in any such law) or was not enforced against the property before it was so damaged; and

3. "Claim expenses" in connection with a "claim" for "cleanup costs"; provided however, "claim expenses"

6

> shall not be considered part of the definition of "cleanup costs" to the extent of coverage provided for Financial Assurance indicated in a Schedule of Covered Locations (Financial Assurance) endorsement attached to the policy; ….

20. Under Coverage B set forth in the Policy's Z Choice Pollution Liability Policy coverage form, Plaintiff provides certain "property damage" coverage:

> **I. INSURING AGREEMENTS**
>
> **THESE COVERAGES ONLY APPLY IF AND TO THE EXTENT SPECIFICALLY LISTED AS PROVIDED IN ITEM 5. OF THE DECLARATIONS.**
>
> \* \* \*
>
> **COVERAGE B: BODILY INJURY, PROPERTY DAMAGE AND NATURAL RESOURCE DAMAGES - ONSITE AND/OR OFFSITE EXISTING AND/OR NEW POLLUTION EVENT LIABILITY**
>
> We will pay "loss" that an "insured" is legally obligated to pay as a result of a "claim" for "bodily injury", "property damage" or "natural resource damages" resulting from an "existing pollution event" and/or "new pollution event" that is on, at, under, migrating or which has migrated from a "covered location", provided the "claim" is first made against the "insured" during the "policy period" or optional extended reporting period, if purchased, and the "claim" is reported to us in writing during the "policy period" or applicable extended reporting period described in EXTENDED REPORTING PERIODS (Section VII.).

21. The Policy's Amendatory Endorsement defines "loss" as follows:

> **V. Definitions**
>
> \* \* \*
>
> Y. "Loss" means:
>
> 1. Compensatory damages, whether awarded by a court in a judgment or paid in settlement for:
>
>    (a) "Bodily injury" including costs for medical monitoring for a person;
>
>    (b) "Property damage" including diminution in property value and stigma damage to property, but only

7

> when such diminution in value or stigma damage is
> a direct result of physical injury to such property;

22. The Policy's Z Choice Pollution Liability Policy coverage form defines "property damage" as follows:

> **V. Definitions**
>
> * * *
>
> **KK.** "Property damage" means:
>
> 1. Physical injury to or destruction of tangible property of parties other than an "insured" and including the resulting loss of use thereof; or
>
> 2. Loss of use of tangible property of parties other than "insured" that has not been physical injured or destroyed.
>
> "Property damage" does not include "cleanup costs" or "natural resource damages."

23. The Policy includes, among others, the following exclusions, which are set forth in the Z Choice Pollution Liability Policy coverage form as amended by the Amendatory Endorsement:

> **VI. EXCLUSIONS**
>
> This insurance does not apply to "claims", "cleanup costs", "loss", "interruption expenses", "emergency expenses", "claim expenses" or Supplementary Payments based upon, arising out of, or to the extent comprised of:
>
> * * *
>
> **E. CRIMINAL FINES OR CRIMINAL PENALTIES**
>
> Any criminal fines or criminal penalties.
>
> * * *
>
> **H. KNOWN POLLUTION EVENT**
>
> Any "pollution event" known to a "responsible insured" prior to the effective date of the policy including any byproduct or breakdown products of the irritant, contaminant or pollutant and shall include the entire quantity and geographic extent of any "pollution event". However, this exclusion shall not apply to the extent that:

1. You disclose such known "pollution event" in writing to us prior to the effective date of the policy; and

2. We issue a Known Pollution Event Schedule endorsement and/or Disclosed Documents endorsement to the policy indicating coverage for such "pollution event" either:

    a. At the time of issuance of the policy; or

    b. During the "policy period" at your request, if we accept a written No Further Action determination or other equivalent confirmation from the governmental agency or body having jurisdiction over the "pollution event" that no further action is required with respect to such "pollution event".

* * *

**K. MAINTENANCE, UPGRADES, IMPROVEMENTS OR INSTALLATIONS**

Costs, charges or expenses for maintenance, upgrade, repair or improvement of, or installation of any preventative measures to, any property or processes on, at, within or under a "covered location", "non-owned location" or "job site" even if such maintenance, upgrade, improvement, repair or installation is required:

1. By "governmental authority"; or

2. As a result of "cleanup costs" or "loss" otherwise covered under the policy except to the extent of coverage provided for "cleanup costs" in DEFINITIONS (Section V.) paragraph F. 2 only.

**Q. WRONGFUL ACTS OR DELIBERATE NON-COMPLIANCE**

Any:

1. Knowingly wrongful act, or

2. Any deliberate non-compliance with any statute, regulation, ordinance, administrative complaint, notice of violation, notice letter, executive order, or instruction of any governmental agency or body

by or at the direction of the "responsible insured". However, this exclusion will not apply to:

a) an "insured" who did not commit, participate in, or have knowledge of any of the acts described; or

      b) any agreement entered into by the "insured" with any governmental agency or body having jurisdiction over the "covered location" for the purpose of the suspension or the delayed, phased or gradual introduction of any "governmental authority" administrative complaint, notice of violation, notice letter or instruction of any governmental agency or body.

**D. The Global Comprehensive Liability Policy**

24. Certain Underwriters at Lloyd's, London, subscribe to a Global Comprehensive Liability Insurance Master Policy issued to ICL that was effective at the time of the Incident (the "Global CL Policy").

25. The Global CL Policy provides coverage for "the cost of removing, nullifying or cleaning-up seeping, polluting or contaminating substances" when the pollution is caused by a sudden, unintended and unexpected happening anywhere in the world other than the United States of America, its territories, and possession.

26. The Global CL Policy provides that with respect to pollution coverage it shall respond as primary to any other insurance.

**E. The Insurance Claim**

27. Between July and August 2017, Defendants submitted copies of the complaints filed in the Hoss Action, the Antman Action, and the Keynan Action and requested Plaintiff provide a defense and indemnification against those claims (the "Insurance Claim").

28. In connection with its request for a defense and indemnification for claims arising out of the Incident, Defendants subsequently submitted, in 2018, a copy of the complaint filed in the INPA Action.

29. On or about August 30, 2017, Plaintiff notified Defendants that its investigation of the Insurance Claim was subject to a full and complete reservation of rights.

30. Thereafter Plaintiff sent certain requests for information ("RFI") to Defendants.

31. On numerous occasions since August 30, 2017, Plaintiff has resent the RFI to Defendants. In addition, Plaintiff has also added to and supplemented the RFI with additional requests for information.

32. Despite repeated attempts to compel Defendant's compliance, Defendants have failed to provide any information or documents in response to the RFI.

33. On or about May 3, 2022 Plaintiff disclaimed coverage for the Lawsuits due to, among other things, Defendants' failure to cooperate with Plaintiff's investigation.

**FIRST CAUSE OF ACTION**
**(Declaratory Judgment)**

34. Plaintiff incorporates by reference and realleges the allegations set forth in Paragraphs 1 through 33 of this Complaint as if fully set forth herein.

35. An actual controversy exists between Plaintiff and Defendants relating to their respective legal rights and obligations under the Policy.

36. Defendants failed to cooperate with Plaintiff's investigation into the Insurance Claim by not responding to the RFI.

37. As a result of Defendants' failure to cooperate, Plaintiff is entitled to a declaration that it does not have a duty to defend or indemnify Defendants against the Lawsuits.

**SECOND CAUSE OF ACTION**
**(Declaratory Judgment)**

38. Plaintiff incorporates by reference and realleges the allegations set forth in Paragraphs 1 through 33 of this Complaint as if fully set forth herein.

39. An actual controversy exists between Plaintiff and Defendants relating to their respective legal rights and obligations under the Policy.

40. The Policy provides coverage for claims seeking to impose liability against Defendants for "cleanup costs" and "loss," which is defined, in part, as compensatory damages for property damage.

41. To the extent that the claimants seek to recover for anything other than "cleanup costs" or compensatory damages for "property damage" from Defendants, including natural resource damage, there is no coverage under the Policy.

42. Accordingly, Plaintiff is entitled to a declaration that it does not have a duty to defend or indemnify Defendants against the Lawsuits in connection with any such claims.

### THIRD CAUSE OF ACTION
### (Declaratory Judgment)

43. Plaintiff incorporates by reference and realleges the allegations set forth in Paragraphs 1 through 33 of this Complaint as if fully set forth herein.

44. An actual controversy exists between Plaintiff and Defendants relating to their respective legal rights and obligations under the Policy.

45. The Policy does not provide coverage for claims, "cleanup costs," or "loss" based upon, arising out of, or to the extent comprised of:

> **VI. EXCLUSIONS**
>
> This insurance does not apply to "claims", "cleanup costs", "loss", "interruption expenses", "emergency expenses", "claim expenses" or Supplementary Payments based upon, arising out of, or to the extent comprised of:
>
> \* \* \*
>
> **E. CRIMINAL FINES OR CRIMINAL PENALTIES**
>
> Any criminal fines or criminal penalties.
>
> \* \* \*
>
> **H. KNOWN POLLUTION EVENT**
>
> Any "pollution event" known to a "responsible insured" prior to the effective date of the policy including any

12

byproduct or breakdown products of the irritant, contaminant or pollutant and shall include the entire quantity and geographic extent of any "pollution event". However, this exclusion shall not apply to the extent that:

1. You disclose such known "pollution event" in writing to us prior to the effective date of the policy; and

2. We issue a Known Pollution Event Schedule endorsement and/or Disclosed Documents endorsement to the policy indicating coverage for such "pollution event" either:

   a. At the time of issuance of the policy; or

   b. During the "policy period" at your request, if we accept a written No Further Action determination or other equivalent confirmation from the governmental agency or body having jurisdiction over the "pollution event" that no further action is required with respect to such "pollution event".

*   *   *

**K. MAINTENANCE, UPGRADES, IMPROVEMENTS OR INSTALLATIONS**

Costs, charges or expenses for maintenance, upgrade, repair or improvement of, or installation of any preventative measures to, any property or processes on, at, within or under a "covered location", "non-owned location" or "job site" even if such maintenance, upgrade, improvement, repair or installation is required:

1. By "governmental authority"; or

2. As a result of "cleanup costs" or "loss" otherwise covered under the policy except to the extent of coverage provided for "cleanup costs" in DEFINITIONS (Section V.) paragraph F. 2 only.

**Q. WRONGFUL ACTS OR DELIBERATE NON-COMPLIANCE**

Any:

1. Knowingly wrongful act, or

2. Any deliberate non-compliance with any statute, regulation, ordinance, administrative complaint, notice of violation, notice letter, executive order, or instruction of any governmental agency or body

> by or at the direction of the "responsible insured". However, this exclusion will not apply to:
>
> a) an "insured" who did not commit, participate in, or have knowledge of any of the acts described; or
>
> b) any agreement entered into by the "insured" with any governmental agency or body having jurisdiction over the "covered location" for the purpose of the suspension or the delayed, phased or gradual introduction of any "governmental authority" administrative complaint, notice of violation, notice letter or instruction of any governmental agency or body.

46. Plaintiff is entitled to a declaration that it does not have a duty to defend or indemnify Defendants against the Lawsuits to the extent the Lawsuits seek to impose liability against Defendants for criminal fines or criminal penalties.

47. Plaintiff is entitled to a declaration that it does not have a duty to defend or indemnify Defendants against the Lawsuits to the extent the Lawsuits seek to impose liability against Defendants for a pollution event that Defendants had actual knowledge of prior to the inception of the Policy.

48. Plaintiff is entitled to a declaration that it does not have a duty to defend or indemnify Defendants against the Lawsuits to the extent the Lawsuits seek to impose liability against Defendants for costs, charges, or expenses for maintenance, upgrade, repair or improvement of, or installation of any preventative measures to, any property or processes on, at, within or under Defendants' processing facility in Mishor Rotem.

49. Plaintiff is entitled to a declaration that it does not have a duty to defend or indemnify Defendants against the Lawsuits to the extent the Lawsuits seek to impose liability against Defendants for a knowingly wrongful act by Defendants or any deliberate non-compliance with any statute, regulation, ordinance, administrative complaint, notice of violation, notice letter, executive order, or instruction of any governmental agency or body by Defendants.

## FOURTH CAUSE OF ACTION
### (Declaratory Judgment)

50. Plaintiff incorporates by reference and realleges the allegations set forth in Paragraphs 1 through 33 of this Complaint as if fully set forth herein.

51. An actual controversy exists between Plaintiff and Defendants relating to their respective legal rights and obligations under the Policy.

52. The Global CL Policy provides primary coverage for liability directly or indirectly caused by, contributed to by, or arising out of the cost of removing, nullifying, or cleaning-up seeping, polluting, or contaminating substances caused by a sudden, unintended, and unexpected happening occurring outside the United States of America.

53. The Lawsuits seek to impose liability against Defendants for the cost of removing, nullifying, or cleaning-up seeping, polluting, or contaminating substances caused by a sudden, unintended, and unexpected happening occurring in Israel.

54. Plaintiff has agreed to pay the difference in limits between the Global CL Policy and the Policy for the Insurance Claim provided the limits of the Global CL Policy have been exhausted by, and the deductible applied toward, coverage for the Lawsuits.

55. Accordingly, Plaintiff is entitled to a declaration that it does not have a duty to defend or indemnify Defendants against the Lawsuits until the limits under the Global CL Policy have been exhausted due to payment of "loss" and/or "cleanup costs."

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Court:

    a.    Take jurisdiction and adjudicate the rights of the parties under the Policy;

    b.    Declare that Plaintiff has no duty to defend or indemnify Defendants against the Lawsuits;

   c.  Awarding Plaintiff such other and further relief as this Court deems just and proper.

Dated: May 4, 2022      Respectfully submitted,

            /s/ *Lynn H. Murray*
            SHOOK, HARDY & BACON L.L.P.
            Lynn H. Murray (IBN 6191802)
            Yara K. Rashad (IBN 6336615)
            lhmurray@shb.com
            yrashad@shb.com
            111 S. Wacker Dr., Suite 4700
            Chicago, IL 60606
            Telephone: (312) 704-7700
            Fax: (312) 558-1195

            William D. Wilson *(pro hac vice* forthcoming)
            MOUND COTTON WOLLAN &
            GREENGRASS LLP
            30a Vreeland Road
            Florham Park, NJ 07932
            Telephone: (973) 494-0600
            Facsimile: (973) 242-4244
            Email: wwilson@moundcotton.com

            *Attorneys for Plaintiff*
            *Steadfast Insurance Company*